PEOPLE, PLAINTIFF AND APPELLEE, *v.* PADILLA, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Mayagüez in a Prosecution for an Offense Against Public Justice.

No. 787.—Decided June 24, 1916.

OFFENSE AGAINST PUBLIC JUSTICE—WARRANT OF ARREST—PROBABLE CAUSE—ARREST.—When in a prosecution for violation of section 148 of the Penal Code—that is, for having maliciously and without probable cause procured the issuance and execution of a warrant of arrest against the prosecuting witness—it is not shown that the warrant was properly executed because the prosecuting witness was not arrested, there is not sufficient ground to support a judgment of conviction.

The facts are stated in the opinion.
*Mr. Leopoldo Feliu* for the appellant.
*Mr. Salvador Mestre, fiscal,* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Section 148 of the Penal Code provides that—

"Every person who maliciously and without probable cause procures a search warrant or warrant of arrest to be issued and executed is guilty of a misdemeanor."

Defendant, appellant, was convicted of the offense thus defined under an information charging the facts as follows:

"On or about one of the days of August, 1914, in the city of Mayagüez of the judicial district of the same, the said Armando Padilla unlawfully, wilfully, maliciously and without probable cause obtained through the municipal judge of Mayagüez, on a sworn complaint relating to the application of the election laws of Porto Rico, the arrest of Juan Carlo who had to give bail in the sum of $200 for his provisional liberty."

The only testimony as to the manner of making the alleged arrest is that of the prosecuting witness, Juan Carlo, who says:

"My name is Juan Carlo. I was born in Cabo Rojo and have resided in Mayagüez since 1892 in the ward Marina Septentrional, where I have been engaged in seafaring pursuits since that time. I am married, have a family and live with my family.

"The first time a complaint was made against me by Armando Padilla, whom I do not know, for double registration because he said that I was registered in the electoral lists twice. The first time I registered was in July, 1914, but I do not remember the number of my registration nor the day. I know one of the registrars before whom I appeared and was registered and that is Angel González. I registered in the city precinct.

"By reason of that complaint I was arrested and gave bail and went to the *fiscal* to make a complaint against Armando Padilla. When that complaint was returnable; when I was summoned. I was called by a policeman with an order of arrest and I went before the *fiscal* with a complaint against Armando Padilla and the sureties because I was bailed. I believe that one of my sureties was Domenech, but I do not remember the others. I was held only a few minutes. I do not know the policeman who came for me and did not talk with him. He told me that a complaint had been made against me and that I should go to the court and I went before the *fiscal*. From there I went to my house. That was the first time. The bail was given before the *fiscal*. I refer to the bail given for me by Domenech and the others whom I do not know; neither do I know the official who received the bail. On cross-examination by the defense, he testified as follows: In July—I do not remember the day on which I was arrested. This was in July or August. What

occurred was that I was notified to appear before the *fiscal* or the judge for a complaint made against me by Armando Padilla, charging me with double registration. That message was given to me by the policeman and it is natural that when they come to look for one * * *. I do not remember whether the policeman showed me any paper or not. I was arrested in the daytime. He did not take me as a prisoner. I came and he told me to appear; that a complaint had been made against me by Armando Padilla, and that I should appear before the judge or the *fiscal*—I do not remember which. I went before the *fiscal* and did not appear before the municipal judge because I was bailed. I did not go before the municipal judge the first time. When the policeman notified me to appear because Armando Padilla had made a complaint against me, he told me to appear before the municipal judge, and I went to the *fiscal*. He told me to appear before the court. I repeat that he told me to appear and where I went was before the *fiscal* with the complaint against Armando Padilla.

"In this matter what I did was to go before the *fiscal* to make a complaint against Armando Padilla who had made one against me. I was not in the municipal court. When the policeman notified me to appear I went to the *fiscal* to make a complaint against Armando Padilla on account of the one he had made against me for double registration. I was not in the municipal court on account of that complaint which he made against me. I was notified and not taken prisoner and when I arrived at the court I was already bailed. The policeman did not take me prisoner nor was I held any time in the court. What I did was to go to the court and when I arrived I was told, 'You are already bailed and may go.' I did not look at the policeman's number and he cannot say that it is true that he took me under arrest. I am thirty-eight years old. I registered this year for the first and only time, and if I were not sure I would not say so."

Admission of the alleged "return" endorsed upon the warrant of arrest was refused upon objection by the defense after the man who made it had given the following account of himself and of his action in this regard:

"My name is Rafael Cohen. In the month of August I held no public office, but acted as a deputy in the office of the municipal court. I do not know Juan Carlo. I do not remember that in the

month of August of this year I received any orders from the secretary or the marshal of the municipal court relating to electoral offenses. I do not remember having received any warrant of arrest against Juan Carlo, but if it is returned by me, I did.

"The *fiscal* then showed the witness the return on the back of the warrant for the arrest of Juan Carlo. The witness identified it and continued testifying as follows:

"The signature which appears there is mine and what is written there was written by me. It says: 'Returned because the accused named therein appeared to give bail.'

"The accused was Juan Carlo and I executed that order. I do not remember whether that order was given to me by the secretary or the marshal. What is written there by me is what took place. He came to the court and gave bail, but I do not remember the individual.

"Cross-questioned by the defense, he answered:

"In August I held no office in Mayagüez but assisted the marshal of the municipal court in his work; I was named for that position by the marshal and he paid me privately. I was not appointed by the Attorney-General nor by the Governor as deputy marshal of the municipal court of Mayagüez. In the return on the warrant of arrest I put deputy marshal under my name because I hold the position of deputy marshal, but the Government cannot pay me a salary. I have no appointment as deputy marshal nor letter authorizing the marshal to appoint me. The only thing is that the Government does not pay me as deputy marshal.

"On re-direct examination by the *fiscal*, he testified:

"I was deputy marshal of the municipal court of Mayagüez. I collected my salary until June of this year, but not since July 1st because the position was not provided for in the new budget. I was recommended for the position of deputy marshal by the marshal of the municipal court. I act as deputy marshal because sometimes I have nothing to do and the marshal pays me out of his salary and I am glad to assist him.

"To questions by the defense, he testified:

"When I serve a summons in a civil case I make an affidavit to the return."

Sections 114 to 116, inclusive, the last mentioned in so far as pertinent, and section 121 of the Code of Criminal

Procedure, Title V, "Arrest, by Whom and How Made," read as follows:

"Sec. 114.—An arrest is taking a person into custody, in a case and in the manner authorized by law..

"Sec. 115.—An arrest is made by an actual restraint of the person of the defendant or by his submission to the custody of an officer. The defendant must not be subjected to any more restraint than is necessary for his arrest and detention.

"Sec. 116.—A peace officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person:

"1. For a public offense committed or attempted in his presence;

\* \* \*

"Sec. 121.—The person making an arrest must inform the person to be arrested of the intention to arrest him, of the cause of the arrest, and the authority to make it, except when the person to be arrested is actually engaged in the commission of or an attempt to commit an offense, or is pursued immediately after its commission, or after an escape." See also 2 R. C. L. 445, 446; 5 C. J. 385–387.

Conceding, for the purposes of this opinion, the sufficiency of the information and the want of probable cause for the sworn complaint mentioned therein, we do not think the facts proved show an execution of the warrant of arrest. The warrant itself is not before us. The return thereon was never admitted in evidence, but, if it had been admitted, assuming the reading thereof by Cohen to be accurate, it would not have shown even an attempted execution thereof but rather an explanation of why it was returned without having been executed. The policeman mentioned by Carlo did not testify. There is no evidence that the warrant was ever placed in his hands, or that he ever saw it, or that he knew of its existence. The record does not disclose whether the bond, furnished without consultation of the principal named therein, was given, and the return made of the execution was endorsed thereon, before or after the conversation between Carlo and the policeman. It is true Carlo makes a

casual reference to an order of arrest, but the whole of his testimony as well as that of Cohen tends rather to negative the idea of any warrant in the hands of the officer, of any intention upon his part to make an arrest, and of any understanding upon the part of Carlo that he was even in the constructive custody of the policeman after delivery of the "message" that a complaint had been filed. It does not even appear that Carlo went to the municipal court for the purpose of giving bail, but rather that he went to the *fiscal* to make a complaint against Padilla and against the volunteer sureties who, without the knowledge or consent of their principal, had made such haste to save him the trouble and inconvenience of a personal appearance.

It may be that the policeman had the warrant in his possession at the time of his conversation with Carlo and that he intended to make an arrest and that Carlo understood that he was under arrest, voluntarily submitted thereto and went to the court with a view to obtaining his release on bail; but these are matters peculiarly susceptible of clear and conclusive proof beyond all reasonable doubt, if true; and the evidence adduced is entirely too flimsy to support a judgment of conviction in a criminal case.

In view of the conclusion reached upon this point we need not consider in detail the nine other errors assigned and argued at some length in appellant's brief.

The judgment appealed from must be

*Reversed.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.